# United States Court of Appeals
## For the First Circuit

---

No. 10-1545

MINEA SOEUNG,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Lipez, and Howard, Circuit Judges.

---

David L. Yavner for petitioner.
Jesse Matthew Bless, Trial Attorney, Office of Immigration
Litigation, Civil Division, United States Department of Justice,
with whom Tony West, Assistant Attorney General, Anthony C. Payne,
Senior Litigation Counsel, and Jennifer Paisner Williams, Senior
Litigation Counsel, were on brief, for respondent.

---

April 25, 2012

---

**LIPEZ, Circuit Judge**.  Minea Soeung, a native and citizen of Cambodia, entered the United States on a non-immigrant visitor visa, overstayed, and timely applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  An immigration judge ("IJ") denied Soeung's application for relief.  After the Board of Immigration Appeals ("BIA") dismissed Soeung's appeal, he petitioned for review of the BIA's order.  We grant the petition, vacate the BIA's order, and remand for further proceedings.

## I.

Entering the United States on a non-immigrant visitor visa on September 6, 2003, Soeung was authorized to remain in this country until March 6, 2004.  He overstayed his visa and, on May 11, 2004, applied for asylum, withholding of removal, and protection under the CAT.  On February 4, 2005, the Department of Homeland Security issued Soeung a notice to appear, charging him with removability as an alien who had remained in the United States longer than authorized.  See 8 U.S.C. § 1227(a)(1)(B).  In an appearance before an IJ, Soeung conceded removability but also renewed his application for asylum, withholding of removal, and protection under the CAT.[1]  A merits hearing was held on November 7, 2007.

---

[1] The date of Soeung's initial appearance before the IJ does not appear in the record.

-2-

Soeung claimed past harassment and a fear of further reprisal for his antagonism to the ruling Cambodian People's Party and the government of Cambodian Prime Minister Hun Sen. Soeung is a member of the opposition Sam Rainsy party in Cambodia. Between July 2002 and September 2003, in his capacity as an immigration officer at Cambodia's largest airport, he covertly gave sensitive information concerning terrorist activities in Cambodia to an employee of the United States government, Amy Fox. Specifically, Soeung leaked information to Fox about the entry into Cambodia of terrorists affiliated with Al Qaeda and Jemaah Islamiyah. These leaks subverted the interests of the Hun Sen government, which was receiving bribes to turn a blind eye to the presence of Islamic terrorists in Cambodia. Fox warned Soeung that disclosing their involvement with one another would endanger them both. Nevertheless, the Hun Sen government discovered Soeung's dealings with Fox, and Soeung was interrogated and threatened with arrest and death. In fear, Soeung enlisted Fox's help to escape Cambodia in September 2003. He has not attempted to contact her and does not know her current whereabouts.

The IJ detected a number of inconsistencies both within Soeung's testimony and between Soeung's testimony and his application. For example, the IJ observed that Soeung's application describes his former position as a "section deputy chief, in charge of all activities at the port of entry." Soeung

testified that he was a "second lieutenant." Soeung also referred to Fox in his testimony as both the "deputy chief of the consul" and an employee of the Central Intelligence Agency ("CIA"). His application identifies Fox as the "third secretary vice counsel political officer of the embassy of the United States in Cambodia."

Although the IJ noted that these and other inconsistencies "would not necessarily have doomed [Soeung's] application for relief," she explained that corroborating evidence of Soeung's involvement with Fox "would have been critical" to establishing Soeung's right to relief. The IJ continued:

> The significant omissions from [Soeung's] application for relief are the lack of any corroborating evidence from the United States Government. There is no letter from Amy Fox nor any other official at the United States Embassy or Consulate in Cambodia, nor any letter from any State Department official or CIA official in the United States that would bolster [Soeung's] claim that he, in fact, provided information to the United States Government at risk to himself. Because of the inconsistencies noted above, this corroborating information is critical. Had it been provided, the outcome of the case might very well have been different.

Accordingly, the IJ denied Soeung's application for relief. Soeung neither requested nor was offered a continuance to obtain any corroborating evidence.

In response to Soeung's appeal, the BIA remanded his case to the IJ for an explicit credibility finding, noting that the IJ "discussed various inconsistencies and omissions, and found that

-4-

[Soeung] failed to provide reasonably available corroboration to establish a claim, but . . . failed to make an explicit credibility finding."  On May 13, 2009, the IJ issued a memorandum clarifying that she had not made an adverse credibility finding and that Soeung's application "was not denied for lack of credibility, but rather, in part, for lack of sufficient proof."

When Soeung appealed again, the BIA dismissed his appeal. It held that the IJ "properly determined that [Soeung] needed additional corroboration, such as evidence from the United States government, to support his claim" and that "[t]he inconsistencies noted by the [IJ] in conjunction with the lack of sufficient corroborating evidence support a determination that [Soeung] failed to provide a plausible and coherent account of the basis for his [application]."

This timely petition for review followed.  The question before us is whether the BIA erred in dismissing Soeung's appeal based on his failure to corroborate his dealings with Fox, the government agent.  In answering this question, we confine our discussion of corroboration to the law as it existed prior to the passage of the REAL ID Act of 2005 ("Real ID Act"), Pub. L. No. 109-13, 119 Stat. 302 (2005), which came into effect exactly one year after Soeung filed his application for relief on May 11, 2004. See Hoxha v. Gonzales, 446 F.3d 210, 216 n.4 (1st Cir. 2006).

-5-

We review the BIA's decision rather than the IJ's, where, as here, "the BIA has rendered a decision with its own analysis of the question at issue." Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011); see also Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004) ("It is the BIA's decision, as the final agency order, that we review."). We review the BIA's legal conclusions de novo and its factual findings under the deferential substantial evidence standard. Peña-Beltre v. Holder, 622 F.3d 57, 61 (1st Cir. 2010).

To be eligible for asylum, an alien must establish his or her status as a refugee. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B); see also Villa-Londono v. Holder, 600 F.3d 21, 24 (1st Cir. 2010). A refugee is an alien who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see also Seng v. Holder, 584 F.3d 13, 18 (1st Cir. 2009). Even if an alien qualifies as a refugee, though, asylum remains a discretionary decision. See 8 U.S.C. § 1158(b)(1)(A); Jia Duan Dong v. Holder, 587 F.3d 8, 10 (1st Cir. 2009). In contrast, withholding of removal provides mandatory relief, see Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004), but "claims for withholding of removal require a higher level of proof than claims for asylum," Villa-Londono, 600 F.3d at

24 n.1. "It follows that an alien who cannot prevail on a claim for asylum must also lose on a counterpart claim for withholding of removal." Seng, 584 F.3d at 20. Finally, to obtain relief under the CAT, an alien must show that it is more likely than not that he or she will be tortured if repatriated. See 8 C.F.R. § 1208.16(c); see also Seng, 584 F.3d at 20.

In some circumstances, an application for asylum, withholding of removal, or protection under the CAT may be granted solely on the basis of the applicant's testimony. See 8 C.F.R. §§ 1208.13(a), 1208.16(b). However, because the burden of proof is on an alien, the BIA has adopted a rule that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided . . . [or] an explanation should be given as to why such information was not presented." In re S-M-J-, 21 I. & N. Dec. 722, 725 (BIA 1997). The failure to produce such corroborating evidence can undermine an applicant's case if not adequately explained. See id. at 725-26.

Corroboration can be required even where an applicant's testimony is deemed credible. See Yang v. Holder, 664 F.3d 580, 584-85 (5th Cir. 2011); Dorosh v. Ashcroft, 398 F.3d 379, 382 (6th Cir. 2004); El-Sheikh v. Ashcroft, 388 F.3d 643, 647 (8th Cir. 2004); Gontcharova v. Ashcroft, 384 F.3d 873, 876-77 (7th Cir. 2004); Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001);

<u>Diallo</u> v. <u>INS</u>, 232 F.3d 279, 285-86 (2d Cir. 2000). <u>But</u> <u>see</u> <u>Ladha</u> v. <u>INS</u>, 215 F.3d 889, 898-99 (9th Cir. 2000). Also, of course, corroboration can be required where an applicant's testimony is disbelieved, <u>see</u> <u>Liqoussou</u> v. <u>Mukasey</u>, 297 F. App'x 11, 13 (1st Cir. 2008) (per curiam), or found only partially credible, <u>see</u> <u>Diab</u> v. <u>Ashcroft</u>, 397 F.3d 35, 40 (1st Cir. 2005), or where no explicit credibility finding is made. The weaker an applicant's testimony, the greater the need for corroborating evidence. <u>Mukamusoni</u>, 390 F.3d at 122 (citing <u>In re Y-B-</u>, 21 I. & N. Dec. 1136, 1139 (BIA 1998)).

However, before the failure to produce corroborating evidence can be held against an applicant, there must be explicit findings that (1) it was reasonable to expect the applicant to produce corroboration and (2) the applicant's failure to do so was not adequately explained. <u>See</u> <u>Chukwu</u> v. <u>Att'y Gen.</u>, 484 F.3d 185, 191-92 (3d Cir. 2007). Once made, these findings are entitled to deference. <u>See</u> 8 U.S.C. § 1252(b)(4). Where such findings have not been explicitly made, the proper course is to vacate and remand. <u>See</u> <u>Chukwu</u>, 484 F.3d at 192; <u>cf.</u> <u>Mihaylov</u> v. <u>Ashcroft</u>, 379 F.3d 15, 20-21 (1st Cir. 2004) (emphasizing the "need for clear administrative findings in reviewing the decision of the IJ or BIA").

As the BIA has explained, it is reasonable to expect corroboration of "material facts which are central to [an applicant's] claim and easily subject to verification, such as evidence of his or her place of birth, media accounts of large demonstrations, evidence of a publicly held office, or documentation of medical treatment." S-M-J-, 21 I. & N. Dec. at 725. On the other hand, "specific documentary corroboration of an applicant's particular experiences is not required unless the supporting documentation is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." Id. at 726.

The corroboration identified by the IJ as lacking in this case is far from typical - a letter "from the United States Government . . . that would bolster [Soeung's] claim that he, in fact, provided information to the United States Government at risk to himself." Indeed, such a letter might be inaccessible to Soeung for the reason he cited - Fox's insistence that she and Soeung maintain the secrecy of their relationship.

Despite the unusual nature of the corroboration at issue, there were no explicit findings by the IJ or the BIA that it was reasonable to expect Soeung to produce corroboration of his involvement with Fox, and that his explanation for the absence of

such corroboration - namely, that Fox had warned him against disclosing their involvement and that he had inferred her unwillingness to document their dealings with each other - was inadequate. The only reference in the record to the former finding is the BIA's unsupported statement that the IJ "found that [Soeung] failed to provide reasonably available corroboration to establish a claim." There is no finding at all on the adequacy of Soeung's explanation for failing to provide the required corroboration.

We cannot read these findings into the record; they should have been made explicitly in the first instance by the IJ and the BIA. See Chukwu, 484 F.3d at 192. Without these findings, the BIA erred in dismissing Soeung's appeal based on his failure to corroborate his dealings with Fox. Accordingly, we grant Soeung's petition, vacate the BIA's order, and remand this case for further proceedings consistent with this opinion.

So ordered.

**- Concurring Opinion Follows -**

**HOWARD, <u>Circuit Judge</u>, (Concurring)**.  While this case in its particulars involves corroborating evidence, or lack thereof, in a larger sense this is a case about credibility.  No one disputes that, if Mr. Soeung's story is truthful, he is eligible to be considered for asylum.  We have explained why the petitioner may not be able to obtain corroboration.  More pointedly, we have observed that the agency has not made the required finding that Soeung has inadequately explained his failure to corroborate.  Granted, one might reasonably expect that a petitioner who, like this one, has shown no hesitation to reveal alleged facts that may put himself or others at risk, also would not hesitate to attempt, at the very least, to provide corroboration for those assertions.  Given the current posture of the case, however, one might also reasonably expect the government itself now to take the modest step of attempting to verify this petitioner's story.  In light of the stakes to the petitioner and perhaps to others, the government should do so.