# United States Court of Appeals
## For the First Circuit

No. 16-1115

GERMAN DONALDO RIVERA-COCA,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya and Barron,
Circuit Judges.

Ilana Etkin Greenstein and Macias & Greenstein, LLC on brief for petitioner.
Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Eric W. Marsteller, Senior Litigation Counsel, Office of Immigration Litigation, Rachel L. Browning and Juria L. Jones, Trial Attorneys, Office of Immigration Litigation, on brief for respondent.

December 30, 2016

**SELYA**, **Circuit Judge**.  The petitioner, German Donaldo Rivera-Coca, is a Honduran national.  He seeks judicial review of a final order of the Board of Immigration Appeals (BIA), which denied his application for asylum and withholding of removal.  Concluding, as we do, that the BIA's order is supported by substantial evidence, we deny the petition.

## I.  BACKGROUND

We rehearse the facts as recounted by the petitioner and then limn the travel of the case.  The petitioner owned a small accounting firm in Puerto Cortes, Honduras, which frequently did business with that nation's Liberal Party (though the petitioner states that he is not politically inclined and does not support any particular political party).  Early in 2011, the petitioner discovered political propaganda posters supporting the rival National Party displayed on the walls and windows of his office.  He tore down the posters but they soon reappeared.

After the petitioner removed the posters a second time, three or four men, dressed in clothing typically worn by National Party activists, came to his office and assaulted him.  The petitioner says that he reported the matter to the police and that he sought medical treatment.  He asserts that, despite his report, the police never investigated the matter.

A few days later, the petitioner discovered that the posters were once more in evidence.  He removed them but, shortly

thereafter, he started receiving threats. We briefly describe the threats. The petitioner testified that a handwritten note was delivered to his office and — although the original note was never produced — he claimed that it said that he "had to be very careful" and that those who do not respect "the blue ones" regret it.[1] The petitioner did not report this message to the police.

One evening in March of 2011, a stranger dressed in what the petitioner described as typical National Party attire (a white shirt and blue jeans) approached the petitioner on the street. The stranger told the petitioner that he was "going to die if [he did not] join [them]." Once again, the petitioner did not report this threat to the police.

The petitioner's family also became involved: on a few unspecified occasions, National Party activists told the petitioner's wife that they knew where her husband lived and where he was. In addition, caravans of cars bearing National Party flags stopped in front of the family's home. The occupants of the cars shouted, "I know who you are and I know who you're dealing with."

Concerned about the situation, the petitioner took his family to his mother-in-law's house (five or six hours away). Despite this relocation, caravans of cars continued to appear.

---

[1] The petitioner testified that "the blue ones" was a shorthand for members of the National Party.

Men shouted from the cars, "Never mind where you go. Never mind where you are. We know where you are."

The petitioner decided to flee to the United States. Leaving his family in Honduras, he entered the United States without documentation in May of 2011. He was apprehended and questioned by Border Patrol agents. He told the agents that he intended to live and work in the United States for two years and that he did not fear returning to Honduras. But during an interview some months later, the petitioner changed his tune, saying that he in fact feared persecution and was afraid to return to Honduras.

In due course, the Department of Homeland Security initiated removal proceedings, charging that the petitioner was present in the United States without legal sanction. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). The petitioner conceded removability but cross-applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). He argued that he had a well-founded fear of persecution based on his recent experiences in Honduras.

After a merits hearing, an immigration judge (IJ) denied the petitioner's requests for relief and ordered his removal. In doing so, the IJ noted several inconsistencies in the petitioner's testimony and expressed serious doubts about his credibility. The IJ went on to find that the petitioner's testimony was not

"otherwise credible," that is, that the petitioner had not overcome the inconsistencies in his testimony through readily available corroborating evidence and, thus, had failed to carry his burden of proving eligibility for relief.

The IJ did not stop there but, rather, used both a belt and suspenders. She held that even if the absence of corroborating evidence was overlooked and the petitioner's testimony was deemed fully credible, the mistreatment that he allegedly suffered did not rise to the level of past persecution. By the same token, that mistreatment did not justify a well-founded fear of future persecution. She added that no probative evidence showed that the petitioner was likely to be targeted should he be repatriated, especially given the recent election (2013) of a new president in Honduras and the ascension to power of a new administration.

With this preface in place, the IJ ruled that the petitioner was not entitled to asylum, withholding of removal, or CAT protection. The petitioner countered by appealing to the BIA. He asseverated that the IJ committed clear error in evaluating his credibility, in requiring corroborating evidence, in concluding that past persecution had not been demonstrated, and in concluding that no well-founded fear of future persecution existed.

The BIA dismissed the petitioner's appeal. Its reasoning was relatively narrow: it affirmed the IJ's holding that, even presuming the petitioner to be credible, he had not carried

- 5 -

either his burden of explaining the lack of corroborating evidence or of showing that what he had experienced rose to the level of persecution. Relatedly, it affirmed the IJ's ruling that the petitioner had not demonstrated an objectively reasonable basis to support his claim of a well-founded fear of future persecution.

This timely petition for judicial review followed. See 8 U.S.C. § 1252(a).

## II. ANALYSIS

In this venue, the petitioner challenges the denial of his claims for asylum and withholding of removal. He does not challenge the denial of his CAT claim. We limit our analysis accordingly and treat the CAT claim as waived. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010).

In the immigration context, judicial review normally focuses on the decision of the BIA, which constitutes the agency's final order. See Wan v. Holder, 776 F.3d 52, 55 (1st Cir. 2015). But where, as here, the BIA merely adds its gloss to the IJ's findings and conclusions, we treat the two decisions as a unit and review them together. See id. at 55-56.

We start with the petitioner's asylum claim because a claim for withholding of removal "imposes a 'more stringent burden of proof on an alien than does a counterpart claim for asylum.'" Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011) (quoting Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005)).

- 6 -

Thus, if the petitioner "fails to establish a well-founded fear of persecution sufficient to ground an asylum claim, a counterpart claim for withholding of removal . . . necessarily fails." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009).

Absent any material error of law — and we discern none here — our review of a refusal to grant asylum is aimed at determining whether the agency's denial is supported by substantial evidence in the record. See Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). In the course of that review, we must accept the agency's findings of fact, including its credibility determinations, as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citation omitted). Consequently, the agency's fact-based determination that an alien is not entitled to asylum must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Of course, the agency's rulings of law are reviewed de novo. See Da Silva, 394 F.3d at 5. In this context, however, courts must afford some deference to the BIA's reasonable interpretations of statutes and regulations relating directly to immigration matters. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999); see also Ahmed, 611 F.3d at 94 (explaining that the

BIA is afforded "a measure of respect" with regard to its interpretations of immigration statutes).

To qualify for asylum, an alien must carry the burden of establishing that he is a "refugee" within the meaning of the Immigration and Nationality Act (INA). See 8 U.S.C. § 1158(b)(1); see also id. § 1101(a)(42)(A) (defining "refugee" as any person outside his home country who is unable or unwilling to return due to persecution or a well-founded fear of future persecution). An alien may carry this burden either by proving past persecution based on "race, religion, nationality, membership in a particular social group, or political opinion," or by proving a well-founded fear of future persecution based on one of these five protected grounds. Id. § 1101(a)(42)(A); see 8 C.F.R. § 208.13(b); see also Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005), superseded in unrelated part by 8 C.F.R. § 1240.26(i), as recognized in Ivanov v. Holder, 736 F.3d 5, 20 (1st Cir. 2013). If the alien succeeds in showing that he has suffered past persecution, a rebuttable presumption arises that he will suffer future persecution as well. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 34 (1st Cir. 2005).

An alien may satisfy his burden of proving entitlement to asylum "by [his] own testimony if that testimony is specific and credible." Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008). This allocation of the burden of proof has consequences: if the alien's testimony is not itself compelling, the "absence of easily

obtainable corroborating documentation can be the final straw." Id. Indeed, Congress has specifically allowed IJs to require corroboration even to support otherwise credible testimony. See 8 U.S.C. § 1158(b)(1)(B)(ii); see also Soeung v. Holder, 677 F.3d 484, 488 (1st Cir. 2012). If the IJ "determines that the applicant should provide [corroborating evidence], such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain [it]." 8 U.S.C. § 1158(b)(1)(B)(ii). A failure either to provide readily available corroborating evidence or to offer a compelling explanation for such a failure can be fatal to an asylum claim. See Soeung, 677 F.3d at 487-88; Chhay, 540 F.3d at 6.

In the case at hand, the IJ rested her decision on two independently sufficient grounds. First, she ruled that the petitioner's testimony did not suffice to carry his burden of proof because she had serious doubts about his truthfulness and the petitioner failed to produce corroborating evidence to overcome these doubts. Second, the IJ ruled that, even if she overlooked her doubts about the petitioner's credibility and the lack of corroborating evidence, the mistreatment that he experienced did not rise to the level of persecution. She added that with past persecution not proven, the record (unaided by any presumption) failed to show a well-founded fear of future persecution.

The BIA did not pass directly upon the petitioner's credibility, but upheld the IJ's finding that the petitioner had failed to submit readily available corroborating evidence and, thus, had failed to carry his burden of proof. It also upheld the IJ's alternate holding that the petitioner had failed to prove persecution. We hold that substantial evidence supports the BIA's lack-of-corroborating-evidence rationale. Because this rationale is independently sufficient to sustain the denial of asylum, we take no view of the BIA's lack-of-persecution rationale.

We are bound to accept the IJ's and the BIA's determinations regarding the unpersuasiveness of the alien's testimony, the availability of corroborating evidence, and the effect of not producing corroborating evidence "unless the record compels a contrary conclusion." Chhay, 540 F.3d at 6 (citing, inter alia, Kho v. Keisler, 505 F.3d 50, 57 (1st Cir. 2007)). The record before us compels no such conclusion.

The IJ would have been permitted to require the petitioner to produce corroborating evidence even if she had found him "otherwise credible," as the BIA assumed for the purpose of his appeal. See 8 U.S.C. § 1158(b)(1)(B)(ii); Soeung, 677 F.3d at 488. Here, however, the IJ identified several gaps in the petitioner's testimony that prompted her to require additional corroborating evidence. For example, she observed that even though the petitioner "had appeared to testify sincerely and

- 10 -

forthrightly," other evidence in the record called his story into serious question. For instance, the petitioner testified that after his assault, he went to the doctor and then to the police. The reports that he submitted, though, indicated that he went first to the police and then to the doctor three to five days later. Moreover, the police report included no mention of any assault.

To cite another example, the IJ observed that even though the petitioner initially told Border Patrol agents that he did not fear returning to Honduras, he reversed his field a few months later. On a different point, the IJ noted that the petitioner offered no evidence indicating that his accounting business ever existed.

The petitioner did not produce the corroborating evidence that the IJ reasonably required. See 8 U.S.C. § 1158(b)(1)(B)(ii). For example, he submitted no credible evidence proving the existence of his accounting business. Nor did he submit an affidavit or statement from his wife or mother-in-law verifying any aspect of his story. So, too, he failed to furnish the original threat letter that he claimed to have received (even though he testified that his wife had saved it).

Nor did the petitioner adequately explain his failure to supply corroborating evidence. Such evidence appears to have been readily available, given that the petitioner remained in contact with his family in Honduras and asserted that they could provide

- 11 -

statements to support his claim. Yet, when the petitioner was asked whether he had an "affidavit or a letter from [his] wife" or mother-in-law supporting his version of the events, he simply responded: "No."

To say more would be pointless. The petitioner does not argue that the IJ failed to follow proper procedures or that he was entitled to additional notice that corroboration would be required. By the same token, he does not challenge the reasonableness of the IJ's request. And any such challenge would be fruitless: the IJ expected him to produce important items of corroboration that the petitioner himself had indicated were readily available.

The short of it is that the IJ expressed reasonable concerns about the credibility of the petitioner's testimony and anticipated that he would supply reasonably available documentation to support his claims. In response, the petitioner stonewalled: he failed to furnish either corroborating evidence or a plausible explanation for the absence of it. We hold, therefore, that the IJ's and the BIA's lack-of-corroboration rationale is supported by substantial evidence in the record considered as a whole.

The petitioner's claim of a well-founded fear of future persecution can be swiftly dispatched. To show a well-founded fear of future persecution without the benefit of any rebuttable

presumption based on past persecution, see Palma-Mazariegos, 428 F.3d at 34-35, an alien must establish both that he had a genuine fear of future persecution and that an objectively reasonable basis existed for that fear. See Nikijuluw v. Gonzales, 427 F.3d 115, 121-22 (1st Cir. 2005). The petitioner might have been afraid, but he has not identified an objectively reasonable basis for that fear.

To be sure, the petitioner submitted general information about the political climate in Honduras. That evidence mentioned isolated incidents in which political dissidents were targeted by National Party activists during the period leading up to the 2013 election. Overall, though, that election was generally transparent, orderly, and credible. It resulted in the seating of a new president, and nothing in the record suggests that this new administration supports (or even tolerates) violent persecution of its opponents. Seen in this light, we have no sound basis for disturbing the agency's determination that the petitioner has not carried his burden of establishing a well-founded fear of future persecution. See Rodriguez-Ramirez, 398 F.3d at 123.

Based on the foregoing, we conclude that the IJ's and the BIA's denial of the petitioner's claim for asylum must stand. This conclusion effectively ends our inquiry: our disposition of the petitioner's asylum claim dooms his withholding of removal claim as well. See Amouri, 572 F.3d at 35 (noting that if the

petitioner "fails to establish a well-founded fear of persecution sufficient to ground an asylum claim, a counterpart claim for withholding of removal . . . . necessarily fails"); Rodriguez-Ramirez, 398 F.3d at 123 (similar).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.


**So ordered**.