# United States Court of Appeals
## For the First Circuit

No. 20-1533

LUIS ALFREDO ZARUMA-GUAMAN,

Petitioner,

v.

ROBERT M. WILKINSON,[*]
Acting United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Selya and Kayatta, Circuit Judges.

Kevin P. MacMurray and MacMurray & Associates on brief for petitioner.

Matthew B. George, Senior Litigation Counsel, Office of Immigration Litigation, Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil Division, U.S. Dep't of Justice, and Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Robert M. Wilkinson has been substituted for former Attorney General William P. Barr as the respondent.

February 9, 2021

**SELYA**, **Circuit Judge**.  The petitioner, Luis Alfredo Zaruma-Guaman, entreats us to set aside a decision of the Board of Immigration Appeals (BIA), which affirmed the denial of his application for asylum, withholding of removal, and other relief. The BIA decision rested largely on a credibility determination made by the immigration judge (IJ).  Mindful that such determinations, when made by a judicial officer who has the benefit of seeing and hearing the witness testify at first hand, deserve a considerable measure of deference, we deny the petition for judicial review.

## I. BACKGROUND

We start by briefly rehearsing the relevant facts and travel of the case.  The petitioner is an Ecuadorian national who entered the United States without a valid entry document on November 4, 2014.  He did not get very far:  he was apprehended near the southern border later that day.  At the time, the petitioner was twenty years old.

The petitioner was interviewed by a border patrol agent the following day.  When the interview commenced, the petitioner swore that his responses would be truthful.  Asked whether he was in fear of persecution or torture in Ecuador, the petitioner responded in the negative.  The interview was recorded in an official report, which the petitioner subsequently refused to sign.  This report was titled "Record of Sworn Statement in

Proceedings under Section 235(b)(1) of the Act," and we will refer to it as the "sworn statement report."

The petitioner was detained, and the Department of Homeland Security (DHS) issued an expedited removal order. Later — the record is tenebrous as to the precise date — the petitioner expressed a fear of persecution should he be repatriated, and DHS held a credible fear interview on November 25, 2014. During the credible fear interview, the petitioner claimed that he had been mistreated on approximately ten occasions while in Ecuador by people in his neighborhood and at work. He described being punched, kicked, and insulted due to his indigenous ethnicity (Quechuan) and a podiatric condition. He also claimed that he feared future harm on account of his political affiliation with the Pachacuti party. The petitioner explained that he was unable to report the abuse to the police because he would have been mistreated (although he never said by whom). When asked whether his family members who continued to live in Ecuador had been harmed or threatened, he replied only that his aunt had nearly been shot three months earlier. He speculated that the assault on his aunt was perpetrated by her own grandchildren, whom he alleged to be gang members.

Following the credible fear interview, DHS cited the petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and served him with a Notice to Appear on December 9, 2014. The

petitioner conceded removability and cross-applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). In support, he submitted an affidavit stating that he had been afraid to report his abuse to the Ecuadorian authorities because "the police are corrupt."

The petitioner was released on bond in January of 2015. Hearings were held over a span of more than three years, during which time the case was transferred to Boston, Massachusetts. The petitioner testified at the last hearing (April 20, 2018) that he had been bullied since the age of ten until the time he left Ecuador and that the attacks on him sometimes occurred as often as weekly. He added that he did not go to the Ecuadorian police because they "don't do anything." On cross-examination, though, he admitted that he had gone to the police two or three times, but said that he was ignored. He also acknowledged that he had never sought medical treatment as a result of the alleged abuse.

In due course, the IJ denied the petitioner's cross-applications for relief and ordered him removed to Ecuador. The IJ's denial rested mainly on an adverse credibility determination. The IJ explained, inter alia, that the petitioner's inconsistent stories about whether or not he had reported the alleged abuse to the police threw shade on all of his testimony. These inconsistencies, coupled with the absence of any meaningful corroboration, prompted the IJ to invoke the maxim "falsus in uno,

falsus in omnibus" and made it impossible to find that the Ecuadorian government had denied the petitioner assistance. In light of this adverse credibility determination, the IJ found no credible evidence to support the petitioner's claims of either past persecution or a well-founded fear of future persecution.[1] Nor did the relevant country conditions reports prepared by the State Department indicate that it was more likely than not that the petitioner, if repatriated, would be tortured either at the instigation or with the acquiescence of Ecuadorian officials. Because the IJ found that nothing in the record showed that the petitioner had suffered harm or torture by or with the acquiescence of the Ecuadorian government, his claim for CAT protection foundered.

The petitioner appealed to the BIA, training his sights on the adverse credibility determination. He argued that his testimony was consistent and that any discrepancies were inconsequential. Moreover, he belatedly explained that he had gone to the Ecuadorian police in several instances — but because

---

[1] For the sake of completeness, we note that the IJ accepted the fact that the petitioner was of indigenous ethnicity but found no credible evidence in the record to support either the petitioner's purported involvement with the Pachacuti party or his putative disability. With respect to the latter, the IJ observed that the petitioner had access to pro bono medical care while in the United States but had failed to obtain a medical report to corroborate his claimed disability. The IJ added that, having watched the petitioner walk into the courtroom, he could not say that the petitioner had any disability at all.

- 6 -

they did not want to help him, he was unable to file a report. Relatedly, he claimed that the absence of any official report was what he meant to convey when he testified that he had never gone to the police. In a secondary line of attack, the petitioner argued that the IJ should not have considered the sworn statement report prepared by border officials following his initial interview because he had refused to sign it.

The petitioner's importunings were for naught. The BIA dismissed his appeal, discerning no clear error in the IJ's decision. Indeed, the BIA echoed the IJ's criticisms of inconsistencies both within the petitioner's testimony and between his testimony and his earlier statements. And, finally, the BIA — like the IJ — remarked the lack of any corroborating evidence to buttress the petitioner's claims.

This timely petition for judicial review followed.

## II. ANALYSIS

In this case, the BIA relied largely on the IJ's decision. Following a well-beaten path, we treat the BIA's decision and the IJ's decision as a unit in connection with our review. See Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020).

The petitioner's principal assignment of error relates to the denial of his claim for asylum. To obtain a grant of asylum, an alien must carry the burden of showing that he qualifies as a "refugee" within the meaning of the Immigration and

Nationality Act. 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A); see Rivera-Coca v. Lynch, 844 F.3d 374, 378 (1st Cir. 2016). As relevant here, achieving this benchmark requires the petitioner to show that he is unable or unwilling to return to his homeland on account of either past persecution or a well-founded fear of future persecution. See Rivera-Coca, 844 F.3d at 378. Both corridors lead directly to the same destination: a showing of past persecution engenders "a rebuttable presumption . . . that [the alien] will suffer future persecution . . . ." Id. at 378-79 (citing Palma-Mazariegos v. Gonzales, 428 F.3d 30, 34 (1st Cir. 2005)).

As phrased, the petitioner's challenge to the denial of asylum stands or falls on the IJ's adverse credibility determination (which was upheld by the BIA). Such a determination is a finding of fact, see Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009), and the petitioner does not allege any independent error of law. His claim is, therefore, subject to review under the substantial evidence rubric. See id.

The substantial evidence rubric is both familiar and straightforward. As long as the agency's credibility determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," we must accept it. Id. (quoting Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007)). The extent to which this standard is deferential

bears emphasis: "absent an error of law, we will reverse only if the record is such as to compel a reasonable factfinder to reach a contrary determination." Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008) (citing Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007)).

Congress has limned a constellation of factors on which an IJ may base a credibility determination:

> [T]he demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). Once properly made, "an adverse credibility determination may doom an alien's claim for asylum." Segran, 511 F.3d at 5 (citing Pan, 489 F.3d at 86; Stroni v. Gonzales, 454 F.3d 82, 89 (1st Cir. 2006)).

In arguing against the adverse credibility determination here, the petitioner first suggests that the inconsistencies identified by the agency are not inconsistencies at all. This suggestion is flatly belied by the record: the discrepancies

pointed out by the IJ are apparent,[2] and they supply specific reasons to warrant a finding that the petitioner testified untruthfully regarding facts related to the merits of his claims for relief. No more is exigible to debunk the suggestion that discrepancies did not exist. See Zeru v. Gonzales, 503 F.3d 59, 69-70 (1st Cir. 2007); Zheng v. Gonzales, 464 F.3d 60, 63-64 (1st Cir. 2006).

The petitioner's next contention is equally unavailing. He says that the inconsistencies, even if manifested in the record, are "a very small portion of the testimony" and represent "innocent mistake[s]" that are "wholly inadequate" to support an adverse credibility determination. This contention presumably attempts to draw sustenance from the so-called "heart of the matter" rule, under which inconsistencies were required to be central to an alien's claim in order to impugn his credibility. See Rivas-Mira, 556 F.3d at 4-5. But Congress — well before the proceedings in this case — consigned the "heart of the matter" rule to the scrap

---

[2] Most importantly, the IJ showcased a host of inconsistencies concerning whether or not the petitioner had reported his alleged abuse to the police. Both during his credible fear interview and on direct examination, the petitioner denied ever going to the police to report the abuse. In the same vein, both in his asylum application and in the accompanying affidavit, the petitioner recounted how fear of possible mistreatment had kept him from going to the police. During cross-examination, however, he changed his tune and vouchsafed that he had gone to the police two or three times to report the abuse. So viewed, the inconsistencies are stark.

heap by passing the REAL ID Act. See id. at 4. The REAL ID Act, which governs this case, replaced the "heart of the matter" rule with a totality-of-the-circumstances approach. See 8 U.S.C. § 1158(b)(1)(B)(iii). For present purposes, then, the "heart of the matter" rule is a dead letter.

We add, moreover, that whether the inconsistencies are the product of mistake or mendacity is not dispositive. On this petition for review, our singular focus is whether, in light of the record as a whole, the inconsistencies are of a type and kind that substantially support the IJ's adverse credibility determination. We think it clear that the inconsistencies apparent in this record pass through this screen.

Grasping for straws, the petitioner submits that because the IJ did not make any express comment about the petitioner's demeanor, the adverse credibility determination stands on shaky ground. We do not agree. A witness's demeanor is, of course, a relevant integer in the credibility calculus and — as a general matter — a judicial officer who sees and hears a witness has a superior coign of vantage in assessing that witness's credibility. See Jianli Chen v. Holder, 703 F.3d 17, 24 (1st Cir. 2012). Even so, specific findings about a witness's demeanor are not essential to an adverse credibility determination.[3] See id. (describing IJ's

---

[3] The petitioner cites Ly v. Mukasey, 524 F.3d 126, 131 (1st Cir. 2008), in which we state that "[w]hen a credibility

- 11 -

observations of witness's demeanor as merely "fortif[ying]" credibility determination); cf. United States v. Rodriguez-Estrada, 877 F.2d 153, 158 (1st Cir. 1989) (describing jurors as "the judges of the witnesses' demeanor and credibility" even though jurors make no specific findings about a witness's demeanor).

So, too, the petitioner offers no authority to support his ipse dixit that the agency should not have considered as evidence the sworn statement report prepared by border agents because the petitioner later refused to sign it. This argument amounts to deeming the evidence as inadmissible hearsay — but as the petitioner's statement was contained in an official report made in the course of agency business, see 8 U.S.C. § 1225(b)(1)(A), the argument fails. See Ye v. Lynch, 845 F.3d 38, 44 (1st Cir. 2017)(affirming IJ's reliance on sworn statement report); see also Arias-Minaya v. Holder, 779 F.3d 49, 54 (1st Cir. 2015) (explaining that "it is settled beyond hope of contradiction that in reviewing requests for discretionary relief, immigration courts may consider police reports even when they rest largely on hearsay"); cf. Fed. R. Evid. Rule 803(8) (memorializing exception to hearsay rule for public records).

---

determination is based on discrepancies in an alien's testimony rather than on h[is] demeanor while testifying, . . . , the IJ's conclusion that []he was not credible is entitled to less deference." Ly 524 F.3d at 131. This distinction is irrelevant where, as here — and unlike in Ly itself — the discrepancy in the testimony is patent. See id.

Here, the sworn statement report bore sufficient indicia of reliability. For one thing, the petitioner does not refute that the report is in fact a sworn statement, as he himself promised under oath that it would be at the beginning of the interview. For another thing, the sworn statement report bore the contemporaneously affixed signature of a third-party witness. And in any event, the fact that the petitioner refused to sign the sworn statement report after it was prepared goes to its weight, not to its admissibility. See 8 U.S.C. § 1158(b)(1)(B)(iii) (authorizing admission in immigration proceedings of "statements (whenever made and whether or not under oath . . . )"); Martinez v. Holder, 734 F.3d 105, 112-13 (1st Cir. 2013) (finding report of interview unsigned by interviewee to constitute reliable evidence in immigration proceeding).

The petitioner also suggests that a statement made in his credible fear interview should not have been given any weight because the interview notes contain a disclaimer to the effect that the document is not a verbatim transcript of the interview. But "[s]trict rules of evidence do not apply in immigration proceedings," Jianli Chen, 703 F.3d at 23 (citing Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996)), and the broad authority conferred by section 1158(b)(1)(B)(iii) permits an immigration court to consider such interview reports, whether or not verbatim transcripts, so long as they are compiled in the ordinary course

of an agency's business and the IJ finds them likely to be accurate accounts of what was stated. See Jiao Hua Huang v. Holder, 620 F.3d 33, 37 (1st Cir. 2010); Pan, 489 F.3d at 86.

The petitioner has a fallback position: he says that he adequately explained his inconsistencies. But even though the petitioner did offer an explanation, not all explanations are sufficient to relieve an alien of the consequences of proven inconsistencies. See id. at 25; Rivas-Mira, 556 F.3d at 5. Here, the petitioner's explanation was rejected by the IJ, who — especially in view of the utter lack of any corroboration — impliedly found it to be threadbare and unconvincing. Given the weakness of the explanation, the IJ's rejection of it was reasonable. We conclude, without serious question, that the record does not compel a contrary finding. The circumstances relevant to this conclusion include the fact that, on various occasions, the petitioner claimed that fear impelled him to stay away from the police and on other occasions claimed that he went to the police (albeit without success). These are irreconcilably different narratives on a plainly relevant point — and the petitioner's proffered explanation does nothing to reconcile them.

In the last analysis, it is the purview of the IJ, within wide limits, to accept or reject an explanation for demonstrated testimonial inconsistencies. Chen v. Gonzales, 418 F.3d 110, 114 (1st Cir. 2005) ("That the IJ might have accepted [the

petitioner's] explanations of his inconsistencies is not to say she was required to do so.")  Those limits were not exceeded (or even closely approached) in the case at hand.  Thus, the IJ's adverse credibility determination is supported by substantial evidence in the record, and the BIA's denial of the petitioner's asylum claim must be upheld.

We need go no further.  The petitioner's claim for withholding of removal requires a showing of a clear probability that, if repatriated, he would be persecuted on account of a protected ground.  See 8 U.S.C. § 1231(b)(3)(A); Cabas v. Holder, 695 F.3d 169, 173 (1st Cir. 2012).  Because the petitioner has failed to satisfy the less stringent standard required for asylum, his counterpart claim for withholding of removal necessarily fails.  See Rivera-Coca, 844 F.3d at 378.  And as for his CAT claim, the petitioner makes no developed argument in this venue that any evidence in the record demonstrates that he either has been tortured or, if repatriated, is in danger of being tortured by or with the acquiescence of the Ecuadorian government.  Hence, we deem his claim for CAT protection abandoned.  Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010) (reaching similar result based on "the venerable precept that appellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived") (quoting Jiang v. Gonzales, 474

- 15 -

F.3d 25, 32 (1st Cir. 2007) and <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)).

## III. CONCLUSION

For the reasons elucidated above, we deny the petition for judicial review.

**<u>So Ordered</u>**.