**William Jorquin JISON,
et al., Petitioners,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 02–71875.
Agency Nos. A72–440–564, A72–440–565, A72–440–566, A72–440–567, A72–440–568.

United States Court of Appeals,
Ninth Circuit.

---

34. *Sousa,* 143 F.3d at 1245.

Submitted May 15, 2003.*

Decided Aug. 4, 2003.

---

\* This panel unanimously finds this case suit-
able for decision without oral argument.  See     Fed. R.App. P. 34(a)(2).

640

Before TASHIMA, BERZON, and CLIFTON, Circuit Judges.

### MEMORANDUM**

William Jison, a native and citizen of the Philippines, petitions this court for review of a Board of Immigration Appeals (BIA) decision denying his request for asylum and withholding of deportation. His wife, Windelina Jison and their three children, Winji, Wilindy, and Wilrose are derivative applicants whose petitions depend exclusively on the merits of Jison's petition. Because deportation proceedings were instituted prior to April 1, 1997, but the BIA decision was rendered after October 30, 1996, the transitional rules apply, *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). We therefore have jurisdiction under 8 U.S.C. § 1105(a).

1. This case demonstrates the difficulty we face directly reviewing an Immigration Judge (IJ) decision. The BIA affirmed the decision without opinion under 8 C.F.R. § 3.1(a)(7) (2002), thereby designating the IJ decision as the final agency opinion for purposes of judicial review, § 3.1(a)(7)(iii)(2002). This action hides from us the basis upon which the BIA affirmed the result. *See id.* ("An order affirming without opinion ... approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision ...."). As the BIA has provided no guidance, we are left to decipher, as best we can, the IJ decision.

** This disposition is not appropriate for publication and may not be cited to or by the

The IJ issued a confused opinion which, in places, casts serious doubt on petitioner's credibility. We have held, however, that an adverse credibility determination must be explicit. *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658–59 (9th Cir.2003); *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000); *Hartooni v. INS*, 21 F.3d 336, 342–344 (9th Cir.1994). The IJ found Jison credible with respect to his "general claim" but had "difficulty" with portions of his testimony.

We conclude that the IJ stopped short of making an explicit adverse credibility finding. The IJ instead withheld relief by concluding that Jison's testimony, even if credited, did not establish eligibility for asylum or withholding of deportation. That the INS does not defend the IJ's decision as based on an adverse credibility determination lends support to our understanding of the IJ decision.

2. Substantial evidence supports the IJ's determination that Jison suffered no past persecution. The IJ reasonably concluded that the 1985 and 1989 incidents recounted by Jison were not politically motivated, as those incidents occurred before the New People's Army ("NPA") became aware that Jison held political views contrary to its cause.

The remaining evidence of past persecution consists of Jison's testimony that he received death threats. Unfulfilled threats, without more, do not ordinarily compel a finding of past persecution. *Lim v. INS*, 224 F.3d 929, 937 (9th Cir.2000). Jison has not demonstrated unusual circumstances or particularly egregious threats which would compel a fact-finder to find past persecution from unfulfilled threats alone. *See id.*

3. As to Jison's claim that he feared future persecution, the IJ accepted

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

as genuine Jison's subjective fear of the NPA. The dispositive question is whether that fear was objectively reasonable. *Lim,* 224 F.3d at 934. The IJ concluded that Jison's fear was not objectively reasonable, a determination to which we must defer if supported by substantial evidence. *Id.* at 934–35.

On this record, we are unable to confirm that substantial evidence supports the IJ's decision. If Jison's testimony is credited, Jison has established that he has received numerous death threats, by both letter and telephone, from the NPA because of his involvement with the Civilian Home Defense Force ("CHDF"); that his name is on an NPA death list; and that the NPA continued to inquire into his whereabouts after he fled the Philippines. *See Lim,* 224 F.3d at 934–35.

The reasons the IJ recites for denying Jison's asylum application can be summarized as: (1) the belief that, had the NPA seriously intended to harm Jison, it would have immediately attempted to kill him, rather than first issuing death threats; (2) the conclusion that the threats must not have been serious because Jison remained at home unharmed for a period of eight months after the threats began; and (3) the fact that country conditions had changed, such that the NPA was no longer a threat in the Philippines.

As to the first reason, we have repeatedly and emphatically rejected the use of personal conjecture about how persecutors would or would not operate. *See, e.g., Maini v. INS,* 212 F.3d 1167, 1175 (9th Cir.2000) ("We have said it before and we say it again: conjecture and speculation can never replace substantial evidence."); *Lopez–Reyes v. INS,* 79 F.3d 908, 912 (9th Cir.1996) ("personal conjecture about what guerrillas likely would and would not do ... is not a substitute for substantial evidence").

■ The second reason cannot suffice to sustain the IJ's conclusion, as the threats continued frequently throughout the eight-month period; the period was too short to demonstrate that the threats would not be acted on; and there was also evidence that Jison's name was on an NPA death list.

Finally, the IJ noted that Jison's fear of the NPA could be mitigated by internal relocation. Where, as here, an applicant fears persecution from a non-governmental entity, the applicant bears the burden of establishing that the relevant threat is country-wide. *Melkonian v. Ashcroft,* 320 F.3d 1061, 1069 & n. 3 (9th Cir.2003) (citing *Lopez–Gomez v. Ashcroft,* 263 F.3d 442, 445–46 (5th Cir.2001)). Jison introduced testimony so asserting, but the IJ found that assertion contradicted by a 1997 State Department country conditions report.

In several instances, however, we have rejected the conclusion that the declining membership of the NPA and its limited geographic presence in the Philippines defeats a claim of country-wide persecution. *See Lim,* 224 F.3d at 935 ("the NPA, although somewhat weaker than before, remains capable of killing its opponents") (citing *Briones v. INS,* 175 F.3d 727, 729 (9th Cir.1999) (en banc)); *cf. Borja v. INS,* 175 F.3d 732, 738 (9th Cir.1999) (en banc) (concluding that the NPA remained interested in killing its opponents, so the INS had not rebutted the presumption of well-founded fear of persecution created by Borja's showing of past persecution).

Although the time period here considered differs somewhat from the time period considered in *Lim, Briones,* and *Borja,* we are unable to ascertain, on this record, whether the country conditions report here relied upon differs in content from those considered in *Lim, Briones,* and *Borja.* From the evidence available, it appears that it does not. *See, e.g., Borja,* 175 F.3d at 738 (analyzing a 1995 Country Condi-

tions report which—like the 1997 report referenced in Jison's case—described "an NPA declining in numbers and geographical presence").

4. Other circumstances of this case, combined with the lack of clarity about how the country conditions information comports with that in the other NPA cases, compel our conclusion that we must grant the petition and remand for further proceedings regarding the reasonableness of Jison's fear of future persecution. The IJ's conclusion regarding the reasonableness of Jison's fear seems "fatally colored" by the conclusion, based only on conjecture, that the NPA did not intend to *ever* act on its threats merely because it had not *yet* done so. *See Briones,* 175 F.3d at 729 (where decision is "fatally colored" by an "erroneous view," remand is appropriate).

At the same time, while we ordinarily accept a petitioner's testimony as true if neither the Board nor the IJ made specific credibility findings, "[h]ere, however, we cannot say that 'no doubts have been raised' " about Jison's testimony. *Hartooni,* 21 F.3d at 343. If the IJ or BIA were to make an explicit and legally sufficient adverse credibility determination regarding the objective reasons for his fear of the NPA, the IJ's impermissible reliance on conjecture might not matter in the end.[1] It is therefore appropriate to allow the IJ to make a more definitive credibility finding if credibility becomes material.

We therefore remand to allow the BIA (or, on remand, the IJ) to make a definitive credibility determination and decide on the basis of the credited facts whether Jison is entitled to asylum. *Cf. INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 356,

154 L.Ed.2d 272 (2002) (rather than conduct independent analysis of issues not reached below, appellate court's "proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

5. As we remand the question whether Jison is eligible for asylum, it is unnecessary to consider whether he could satisfy the higher standard required to qualify for withholding of deportation. The BIA is free to reconsider that question on remand.

For the reasons stated, we **GRANT IN PART** the petition and **REMAND** the case for further consideration.

---

**1.** We do not decide whether the BIA could, after giving Jison the notice requisite to defend his credibility, make an independent credibility determination, *Mendoza Manimbao,* 329 F.3d at 661, or whether under the

new procedural rules, the BIA must remand the credibility issue to an IJ, *see* 8 C.F.R. § 3.1(d)(3). We leave that determination to the BIA.