# United States Court of Appeals
## For the First Circuit

No. 15-2321

OLGA ARECELI MOLINA-DIAZ,

Petitioner,

v.

ROBERT M. WILKINSON,
Acting United States Attorney General,*

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
and Kayatta, Circuit Judge.**

Nancy J. Kelly, with whom John Willshire Carrera and Harvard Immigration & Refugee Clinic of Harvard Law School at Greater Boston Legal Services were on brief, for petitioner.

Stratton C. Strand, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Douglas E. Ginsburg, Assistant Director, and Derek C.

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Robert M. Wilkinson has been substituted as the respondent.

\*\* Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

<u>Julius</u>, Senior Litigation Counsel, were on brief, for respondent.

---

February 25, 2021

---

**HOWARD**, **Chief Judge**.  Petitioner Olga Araceli Molina-Diaz is a Honduran native and citizen who twice entered the United States without authorization.  The government ordered her removed to Honduras, and an immigration judge ("IJ") denied her subsequent application for withholding of removal ("Application").  Molina appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's order and denied Molina's motion to reopen and remand.  Molina now petitions this court to review the BIA's decision.  Because we agree that the IJ and BIA made legal errors, we grant the petition, vacate the removal order, and remand for further proceedings.

## I.  Background and Facts

Molina made her first unauthorized entry into the United States in 2006.  When the Department of Homeland Security ("DHS") apprehended her shortly thereafter, Molina told DHS that she was looking for work, that she was not afraid to return to Honduras, and that she did not think that she would be harmed if she returned to Honduras.  DHS then removed her to Honduras.

Molina again entered the United States without authorization in 2009.  This time, she told DHS that she feared returning to Honduras because of her involvement with MUCA,[1] a

---

[1]  The record translates MUCA (Movimiento Unificado de Campesinos del Aguan) alternatively as the "United Movement of Peasants of Aguan" or the "Unified Movement of Farmers of Aguan."

political organization that advocated for land-reform measures in opposition to the Honduran government's policies. DHS found that Molina had a reasonable fear of persecution and referred her case to an IJ.

In November 2011, Molina filed her Application, including a supporting affidavit and other supporting documents. Molina checked a box on the Application to indicate that she "want[ed] to apply for withholding of removal under the Convention Against Torture" ("CAT"), and she checked another box indicating that she was "afraid of being subjected to torture" if she returned to Honduras.

Molina's supporting affidavit did not expressly request CAT relief. However, it did describe threats against MUCA members, including Molina specifically, made by opposition landowners and their agents in the local police force. Molina also detailed a July 2009 journey that she and other MUCA members made to the Honduras-Nicaragua border to meet with ousted Honduran President Manuel Zelaya. During that journey, elements of the Honduran military and police forces clashed with Zelaya supporters; as a result, some supporters were "killed and stabbed and others were burned." Molina wrote that she had been warned that "militaries and security guards are still looking for [her] and asking . . . when [she] will be back." The supporting affidavit also stated

that Molina feared "rape . . . torture or [being] kill[ed]" if returned to Honduras.

Molina also submitted a three-page supplemental affidavit ("2012 affidavit") before her 2012 merits hearing. In the 2012 affidavit, Molina stated that during the 2009 journey she became separated from her group and was subsequently chased down and raped by an anti-Zelaya Honduran soldier. Molina explained that her youngest child was born of this rape and that she had never discussed the rape with anyone, including her family. Once again, without specifically invoking CAT, Molina expressed her fear that, if removed to Honduras, "it is only a matter of time before I will be raped again, tortured, or even killed."

The IJ denied Molina's Application. Without explicitly finding Molina not credible, the IJ stated that she had "serious doubts" about Molina's credibility due to inconsistencies in Molina's various filings, hearing testimony, and the rape disclosure's timing. Although the IJ acknowledged that Molina submitted "some" corroborating evidence, the IJ required more. She noted that "[a]ll of the doubts the Court has about the credibility of [Molina's] testimony could have been overcome with appropriate corroborating evidence" and described certain information that would have been persuasive. The IJ did not address Molina's CAT claim. Molina appealed.

The BIA issued an October 2015 opinion affirming the IJ's decision and denying Molina's motion to reopen. The BIA determined that the IJ's findings "constitute[d] an adverse credibility finding" that was "not clearly erroneous." The BIA further held that the IJ "correctly determined that [Molina] did not meet her burden to provide, or adequately explain the absence of, reasonably available corroborative evidence." The BIA ruled that the IJ did not have to consider Molina's CAT claim because she failed to reference the CAT in her supporting affidavit. Finally, the BIA denied Molina's motion to reopen because the affidavits and evidence that she wished to provide were either not material or not previously unavailable.

This petition for review followed.

## II. Discussion

Because the BIA adopted and discussed the IJ's findings and conclusions, we examine both decisions. See Giraldo-Pabon v. Lynch, 840 F.3d 21, 24 (1st Cir. 2016). We review findings of fact, including credibility determinations, under the substantial evidence standard, which "requires us to defer to the agency's findings as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Mariko v. Holder, 632 F.3d 1, 5 (1st Cir. 2011) (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)). We review legal questions de novo, with some deference to the agency's

- 6 -

interpretation of its own statutes. Id. at 5 n.2. Finally, we review the BIA's denial of a motion to reopen for abuse of discretion, so the BIA's decision will stand unless Molina shows "that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Giraldo-Pabon, 840 F.3d at 24 (quoting Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008) (internal quotation marks omitted)).

Molina raises multiple arguments in her petition. We need discuss only two to dispense with this particular case. We express no opinion on any issues not addressed below.

## A. Failure to produce corroborating evidence

Molina claims that the IJ and BIA erred in the manner in which they determined that more corroborating evidence was needed. We agree.

Molina applied for withholding of removal in 2011, so provisions of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005), govern the corroboration issue here. See 8 U.S.C. § 1231(b)(3)(C) (incorporating by reference 8 U.S.C. § 1158(b)(1)(B)(ii) and (iii)). Although "[t]he testimony of the applicant may be sufficient to sustain [her] burden without corroboration," 8 U.S.C. § 1158(b)(1)(B)(ii), an IJ may require corroborating evidence regardless of whether or not an applicant's testimony is credible. See Soeung v. Holder, 677 F.3d 484, 488 (1st Cir. 2012).

- 7 -

The parties acknowledge that "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). But the applicability of § 1158(b)(1)(B)(ii) to Molina's case is complicated by the statutory framework governing immigration judges' credibility determinations. Section 1158(b)(1)(B)(ii) uses the term "otherwise credible," and § 1158(b)(1)(B)(iii) lays out the relevant factors on which an immigration judge may "base a credibility determination." Section (b)(1)(B)(iii) also provides that "if no adverse credibility determination is explicitly made, the applicant . . . shall have a rebuttable presumption of credibility on appeal."

These provisions suggest that an immigration judge has three options when it comes to credibility: (1) make an explicit adverse credibility determination, in which case the applicant's testimony would seem to be not "otherwise credible"; (2) make an explicit determination that the applicant is credible, in which case the applicant's testimony would seem to be "otherwise credible"; or (3) make no explicit credibility determination at all, in which case the applicant is afforded a rebuttable presumption of credibility on appeal, but may or may not be "otherwise credible" for the purposes of § 1158(b)(1)(B)(ii).

The problem, then, is the uncertainty as to the applicability of § 1158(b)(1)(B)(ii) for applicants who fall in this third category. Our opinion in Guta-Tolossa v. Holder, 674 F.3d 57 (1st Cir. 2012), seemed to acknowledge, albeit not address, this concern. There, in considering whether a notice requirement existed, the panel suggested that "[i]f section 1158(b)(1)(B)(ii) does include a notice requirement, the requirement would only apply where an IJ finds an applicant's testimony 'otherwise credible,'" id. at 64. And "[t]hat, in turn, presents a question of statutory interpretation: whether the IJ must explicitly find an applicant's testimony 'otherwise credible' on the record, or whether such a finding may be inferred from the whole of the IJ's decision." Id. However, the panel left that question to the Board to decide in the first instance, id., and as far as we can tell, the Board does not appear to have provided an answer to that question.

The parties appear to agree that the judge did not make an explicit determination that Molina was credible. However, Molina argues that the immigration judge "stopped short of making a negative credibility ruling," and therefore, that the Board erred in concluding that the judge had in fact done so. For its part, the government avers that "an adverse credibility ruling 'does not require the recitation of unique or particular words,'" Some v. Gonzales, 183 F.3d. App'x 4, 8 (1st Cir. 2006) (quoting de Leon-Barrios v. INS, 116 F.3d, 391 394 (9th Cir. 1997)), and thus, that

- 9 -

the immigration judge's mention of her "serious doubts" as to Molina's credibility sufficed.

The IJ's expression of "serious doubts" — coupled with her later declaration that all such doubts "could have been overcome with appropriate corroborating evidence" — falls just short of an explicit adverse credibility determination. To be sure, the immigration judge is not bound to using certain magic words. However, there seems to be clear daylight between the words used in her opinion and those discussed not only in our unpublished decision in Some, but also in various unpublished decisions of other courts. In Some, the immigration judge characterized the petitioner's description of certain events as a "phenomenal gross exaggeration." Some, 183 Fed. App'x at 8. The judge further — and explicitly — stated that one of the petitioner's claims "lacked credibility." Id. Similarly, other courts have held that references to "implausib[ility]," Islam v. Holder, 368 Fed. App'x 241, 243 (2d Cir. 2010) (summary order), a lack of "faith" that a petitioner "has actually done what he has stated," Chugh v. Gonzales, 130 Fed. App'x 201, 201 (9th Cir. 2005) (memorandum opinion), or "made up and memorized" events, id., are enough to constitute explicit adverse credibility determinations.

On the other hand, "a confused opinion which, in places, casts serious doubt on [a] petitioner's credibility," Jison v. INS, 72 Fed. App'x 638, 640 (9th Cir. 2003) (memorandum opinion),

- 10 -

or "statements easily lead[ing] to the inference that the IJ was skeptical of [the petitioner's] testimony," Yan Dan Li v. Gonzales, 222 Fed. App'x 318, 323 (4th Cir. 2007), may not amount to an explicit adverse credibility finding. As the Fourth Circuit observed: "For an IJ's credibility finding to be explicit, the IJ must state in no uncertain terms that he finds that the applicant's testimony is or is not credible . . . ." Id.; but see Konte v. Holder, 488 Fed. App'x 135, 139 (7th Cir. 2012) (determining that the immigration judge had made an adverse credibility finding because it could "discern that the IJ believed [the petitioner] failed to carry his burden of proof because his testimony was not credible").

"[T]he '[r]eluctance to make clean determinations of credibility'" appears to be a 'disturbing feature[]'" in immigration cases. See Ikama-Obambi v. Gonzales, 470 F.3d 720, 726 (7th Cir. 2006) (citing Iao v. Gonzales, 400 F.3d 530, 533–34 (7th Cir. 2005)). Indeed, "when an IJ avoids a clean determination of credibility by instead saying that an asylum applicant hasn't carried her burden of proof, the reviewing court is left in the dark as to whether the judge thinks the asylum seeker failed to carry her burden of proof because her testimony was not credible, or for some other reason," such as the failure to provide corroborating evidence. See id. (quoting Iao, 400 F.3d at 534). Though the Board in this case later determined that the immigration

- 11 -

judge had in fact made an adverse credibility determination, it points to nothing in the IJ ruling that so states. And, as we have noted, the IJ expressly left open the possibility that the testimony was accurate. See 8 U.S.C. § 1158(b)(1)(B)(iii).

Accordingly, we find that the immigration judge made no explicit adverse credibility determination, and therefore, that the Board erred in failing to afford Molina the rebuttable presumption of credibility on appeal. And where the applicant has testified credibly but the IJ nevertheless requires additional corroboration, the rules are clear. "Where credible testimony alone is determined to be insufficient" and the IJ has determined

> that specific corroborating evidence should have been submitted, the applicant should be given an opportunity to explain why he could not reasonably obtain such evidence. The [IJ] must also ensure that the applicant's explanation is included in the record and should clearly state for the record whether the explanation is sufficient.

Matter of L-A-C-, 26 I. & N. Dec. at 519, 521-22 (internal citations and footnote omitted). "Permitting the applicant to state the reasons why the corroborating evidence could not be obtained is consistent with both the language of the REAL ID Act and the [BIA's] longstanding practice of allowing aliens to explain discrepancies in the record." Id. at 521 n.4.

This administrative decision, binding on all DHS employees -- including IJs, see 8 C.F.R. § 1003.1(g) -- is also consistent with our own precedent. In Soeung we stated that "there

must be explicit findings that (1) it was reasonable to expect the applicant to produce corroboration and (2) the applicant's failure to do so was not adequately explained" before "the failure to produce corroborating evidence can be held against an applicant." Soeung, 677 F.3d at 488.[2]  Once made, these two findings are entitled to "special deference."  Sarpong v. Lynch, 650 F. App'x 48, 50 (1st Cir. 2015); see also 8 U.S.C. § 1252(b)(4).  And it follows that an IJ cannot explicitly find an applicant's explanation inadequate without first offering her an opportunity to provide such an explanation.

After reviewing the record, we conclude that the IJ never gave Molina the necessary opportunity to explain why she did not provide corroborating evidence.  See Matter of L-A-C-, 26 I. & N. Dec. at 521-22 ("The [IJ] must . . . ensure that the applicant's explanation is included in the record and should clearly state for the record whether the explanation is sufficient."); see also Soeung, 677 F.3d at 489 .  The only reference in the record to any such finding is the BIA's unsupported statement that the IJ "correctly determined that [Molina] did not meet her burden to . . . adequately explain the absence of[] reasonably available

---

[2] Soeung's holdings regarding corroboration remain valid even though that case applied the law as it existed prior to the passage of the REAL ID Act.  See Soeung, 677 F.3d at 487; see also Rivera-Coca v. Lynch, 844 F.3d 374, 379 (1st Cir. 2016); Gurung v. Lynch, 618 F. App'x 690, 695 (1st Cir. 2015).

- 13 -

corroborative evidence."[3]  This naked assertion does not suffice. See Soeung, 677 F.3d at 489 ("We cannot read these findings into the record; they should have been made explicitly in the first instance by the IJ and the BIA.").  Therefore, "the BIA erred in dismissing [Molina's] appeal based on [her] failure to corroborate."  Id.  Accordingly, we vacate and remand.  Id. at 488.

## B. Consideration of Molina's CAT Claim

Molina also argues that the BIA erred in finding that she did not adequately apply for relief under the CAT.  We agree.

The BIA contends otherwise because even though Molina checked the box on her Application to indicate that she "want[ed] to apply for withholding of removal under the [CAT]," her supporting affidavit did not specifically mention the CAT.  This determination, however, is contrary to the BIA's own precedent as set forth in Matter of N-M-, 25 I. & N. Dec. 526 (BIA 2011).  In

---

[3] We note that exhaustion of administrative remedies -- a prerequisite to our review of the corroboration issue, see Wan v. Holder, 776 F.3d 52, 56 (1st Cir. 2015) -- has occurred here. Although Molina did not specifically argue to the BIA that the IJ failed to give her an opportunity to explain her failure to provide corroborating evidence, "[t]he exhaustion requirement is satisfied where, as here, the agency chooses to address the merits of a particular issue, regardless of whether the alien raised that issue."  Id.; see also Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013) ("[A]n issue is exhausted when it has been squarely presented to and squarely addressed by the agency, regardless of which party raised the issue (or, indeed, even if the agency raised it sua sponte).").

that case, the BIA held that an applicant raised a CAT claim despite neither checking the appropriate application box nor by "clearly requesting [CAT] relief before the [IJ]." Id. at 534. The BIA justified this conclusion because the applicant declared "[in her application] that she fear[ed] torture upon return to [her home country] . . . and presented some evidence to support that claim at her hearing." Id.

Here, Molina not only made a declaration and presentation comparable to that in Matter of N-M-, but she also checked the appropriate box on her Application. This demonstrates that Molina clearly articulated a claim for protection under the CAT. Because the BIA's determination runs afoul of its own precedent, it was error. See Haoud v. Ashcroft, 350 F.3d 201, 207-08 (1st Cir. 2003). The BIA should therefore consider Molina's CAT claim on remand.[4]

### III.  Conclusion

For the foregoing reasons, we **grant** the petition, **vacate** the removal order, and **remand** for the BIA, when considering Molina's withholding and CAT claims, to allow Molina to produce the required corroborating evidence or explain why she is unable to do so.

---

[4] By remanding, we imply nothing about the merits of Molina's CAT claim. See Enwonwu v. Gonzales, 438 F.3d 22, 35 (1st Cir. 2006).