# United States Court of Appeals
## For the First Circuit

No. 17-1867

MIRIAM IXCUNA-GARCIA,

Petitioner,

v.

MERRICK B. GARLAND,[*] Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Thompson and Kayatta, Circuit Judges,
and Katzmann,[**] Judge.

Nancy J. Kelly, with whom John Willshire Carrera, Harvey Kaplan, and Harvard Immigration & Refugee Clinic were on brief, for petitioner.
M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, with whom Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Melissa Neiman-Kelting, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.
Mark C. Fleming, Arjun K. Jaikumar, Cristina Salcedo, and Wilmer Cutler Pickering Hale and Dorr LLP on brief for Harvard

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General Jefferson B. Sessions, III.

[**] Of the United States Court of International Trade, sitting by designation.

Program in Refugee Trauma and Dr. F. Barton Evans III, amici curiae.

———————————

February 8, 2022

———————————

**KAYATTA**, **Circuit Judge**.  Miriam Ixcuna-Garcia is a Guatemala-born indigenous K'iche' woman who came to the United States when she was sixteen.  After being detained in a workplace raid in 2007, Ixcuna-Garcia applied for relief that included asylum and withholding of removal.  Her case wound its way back and forth between an immigration judge (IJ) and the Board of Immigration Appeals (BIA) before arriving at this court on the present petition.  As relevant here, the IJ and the BIA found that Ixcuna-Garcia was ineligible for asylum because she exceeded the one-year deadline for applying for such relief, and they denied her application for withholding of removal.  They also questioned Ixcuna-Garcia's credibility, in part due to her failure to provide evidence from her mother corroborating her claim that she had been sexually assaulted as a child.

Before this court, the government concedes that Ixcuna-Garcia's application for withholding of removal should be remanded due to the failure of the IJ and the BIA to consider pertinent aspects of Ixcuna-Garcia's claims of past persecution.  And we agree with Ixcuna-Garcia that the IJ and the BIA also erred in failing to provide her with, at the very least, an opportunity to explain why she could not provide certain corroborating evidence in connection with her request for withholding.  Accordingly, we vacate the denial of Ixcuna-Garcia's application for withholding from removal.  As to her request for asylum, however, we agree

- 3 -

with the government that we lack jurisdiction to review the denial of that application.  Our reasoning follows.

## I.

We begin with the circumstances that prompted this petition.  Ixcuna-Garcia was born in Guatemala to an indigenous K'iche' Mayan family.  She came to the United States in 2002 at the age of sixteen and settled into a K'iche' community in New Bedford, Massachusetts.  Ixcuna-Garcia did not apply for asylum when she first arrived in the United States.

On March 6, 2007, Ixcuna-Garcia was detained during a raid on the Michael Bianco factory in New Bedford and placed into removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i).  After conceding removability, Ixcuna-Garcia applied for both asylum and withholding of removal.[1]  In her initial hearings, Ixcuna-Garcia testified that she had been mistreated in Guatemala due to her indigenous Mayan identity and that she and her family had been threatened with sexual assault by Ladino men.[2]  She also submitted

---

[1]  Ixcuna-Garcia also applied for relief under the Convention Against Torture and for voluntary departure.  The IJ granted her application for voluntary departure but only until January 3, 2012.  Ixcuna-Garcia did not press these separate claims before the BIA in her most recent proceedings and those issues are not before this court on the present petition.

[2]  Ladino refers to an ethnic group within Guatemala comprised of non-Indigenous persons.

written and oral testimony regarding the impact of Guatemala's long and violent civil war on her family.

Thus began a years-long administrative process through which Ixcuna-Garcia's removal proceedings twice went before an IJ and the BIA before arriving at this court.  First, in 2011, an IJ rendered an oral decision denying Ixcuna-Garcia's applications for asylum and withholding of removal.  The IJ found that Ixcuna-Garcia's asylum claim was time-barred because she failed to file her application within one year of entering the country as required by statute.  The IJ also explained that Ixcuna-Garcia had not demonstrated either past persecution or a likelihood of future persecution, noting that there was "no evidence that [Ixcuna-Garcia] would be subjected to torture or persecution if she were to be returned to Guatemala based on her purported fear." Accordingly, the IJ found no basis for granting Ixcuna-Garcia's application for withholding of removal.  Ixcuna-Garcia timely appealed the IJ's decision to the BIA.

In 2013, the BIA issued a decision dismissing in part and sustaining in part Ixcuna-Garcia's appeal.  With respect to asylum, the BIA upheld the IJ's decision, agreeing that Ixcuna-Garcia's application was time-barred.  Although the BIA observed that Ixcuna-Garcia's age when she entered the country (sixteen) might have provided extraordinary circumstances warranting an exception to the one-year filing deadline, the BIA noted that

- 5 -

Ixcuna-Garcia turned eighteen in September 2004 but did not apply for asylum until October 2007. The BIA therefore found that Ixcuna-Garcia had not filed her asylum application "within a reasonable time after she reached the age of 18 years old." The BIA likewise rejected Ixcuna-Garcia's other explanations for the delay in filing, explaining that they did not suffice to establish changed circumstances that excused the delay.

As to withholding of removal, the BIA remanded Ixcuna-Garcia's claim back to the IJ for further consideration of whether Ixcuna-Garcia was more likely than not to face future persecution upon return to Guatemala. The BIA rejected the IJ's conclusion that there was "no evidence" that Ixcuna-Garcia would be subjected to future persecution, observing that the record "contain[ed] an abundance of documentary evidence" on that point and that the IJ had failed to provide a "detailed analysis of the specific facts of [Ixcuna-Garcia's] case in relation to the controlling law." Accordingly, the BIA ordered the IJ to conduct further proceedings and issue a "new decision." The BIA further ordered that the parties should be provided with an opportunity to update the record and present additional arguments.

In the remanded proceedings before the IJ, Ixcuna-Garcia submitted new evidence in support of her applications, including her own supplemental affidavit, affidavits from two cousins, updated country conditions documentation, and a psychiatric

evaluation prepared by Marguerita Reczycki, a clinical nurse specialist who examined Ixcuna-Garcia. In her supplemental affidavit in support of her request for relief, Ixcuna-Garcia stated for the first time that she had been raped as a child by a Ladino man and that Ladino men had attacked her and her cousin. She also explained in her supplemental affidavit her difficulties in applying for asylum when she first arrived in the United States. Reczycki, in turn, opined in a written report that Ixcuna-Garcia met the criteria for chronic and severe major depression and chronic post-traumatic stress disorder based on the traumatic experiences she had endured in Guatemala. Reczycki's report indicated that, in her professional opinion, past trauma prevented Ixcuna-Garcia from speaking about her history of persecution in Guatemala, particularly her rape, and from seeking assistance in applying for asylum within the first year of her entering the United States.

Based on this new evidence, Ixcuna-Garcia requested reconsideration of both her eligibility for a waiver of the one-year asylum application deadline and eligibility for withholding of removal. The IJ conducted further hearings on four separate days spread out over almost two years, ending on April 14, 2016.

Finally, on June 23, 2016, the IJ issued a written decision again denying Ixcuna-Garcia's applications for asylum and withholding of removal. As a threshold matter, the IJ addressed

Ixcuna-Garcia's credibility, declining to fully credit her written and oral testimony regarding her rape by a Ladino man from when she was a child. The IJ noted that Ixcuna-Garcia had not revealed the rape either in her initial application or during her first hearings and that there were inconsistencies between her prior testimony and the testimony she offered in support of her claim that she had been raped. The IJ also declined to give much weight to Reczycki's psychiatric evaluation, observing that Reczycki was a nurse rather than a psychologist or psychiatrist and that Reczycki spent "only three hours" evaluating Ixcuna-Garcia. Additionally, the IJ noted that Ixcuna-Garcia failed to provide an affidavit from her mother corroborating the described rape.

The IJ next found that Ixcuna-Garcia's eligibility for asylum was not properly before the IJ on remand because the BIA had upheld the IJ's earlier determination that Ixcuna-Garcia was not eligible for a waiver of the one-year timing requirement. The IJ then concluded that, even if he could consider the claim, the new evidence submitted on remand, including the evidence Ixcuna-Garcia provided regarding her psychological trauma, did not reflect changed conditions directly related to Ixcuna-Garcia's delay in filing.

As to withholding of removal, the IJ found that he lacked jurisdiction to consider any new claims on remand based on mistreatment Ixcuna-Garcia had failed to allege in her initial

- 8 -

filings or testimony, including Ixcuna-Garcia's described rape. The IJ went on to conclude that, even if he could consider the new evidence and arguments, Ixcuna-Garcia still would fail to establish past persecution or a clear likelihood of future persecution in Guatemala on account of a protected ground. Ixcuna-Garcia again filed a timely appeal to the BIA.

This time, the BIA upheld all aspects of the IJ's decision. First, the BIA agreed with the IJ's denial of reconsideration as to Ixcuna-Garcia's asylum application. The BIA explained that the new evidence Ixcuna-Garcia submitted on remand regarding her psychological trauma was not "dispositive to establish the veracity of all aspects of [her] claims" relating to her failure to apply for asylum in the required timeframe. The BIA similarly found that Ixcuna-Garcia's other new evidence of changed conditions in Guatemala did not "materially affect [Ixcuna-Garcia's] eligibility for asylum."

The BIA also upheld the IJ's credibility finding. The BIA explained that although it gave "less weight than the Immigration Judge to the inconsistencies concerning why [Ixcuna-Garcia] did not mention her rape, it [wa]s relevant that she did modify her explanation to some extent." The BIA further noted that "the lack of an affidavit from [Ixcuna-Garcia's] mother concerning the rape is indicative of a lack of credibility."

The BIA likewise affirmed the IJ's rejection of Ixcuna-Garcia's application for withholding of removal. The BIA found that Ixcuna-Garcia had failed to establish that her indigenous identity was a central reason for the rape and other mistreatment she testified to on remand. Thus, she could not establish past persecution. As to future persecution, the BIA reasoned that Ixcuna-Garcia's proffered evidence on remand failed to show a pattern and practice of mistreatment of indigenous women in Guatemala. Notably, both the IJ and the BIA only addressed the persecution claims that were introduced on remand and did not attend to the claims Ixcuna-Garcia had made in her initial proceedings and renewed on remand. After the BIA issued its latest decision, Ixcuna-Garcia filed this timely petition for review.

Before this court, Ixcuna-Garcia raises three principal contentions. First, she argues that the IJ and the BIA erred in finding her ineligible for an exemption to the statutory timeline for seeking asylum. Second, she asserts that the IJ and the BIA erred in their credibility determinations, including by failing to give her notice of a need to obtain (or explain the absence of) corroborating evidence and by rejecting the testimony of an expert concerning her failure to report previously a claim of rape. Finally, she contends that the IJ and the BIA erred in finding that she had failed to meet her burden of proof for withholding of removal.

We begin with the government's contention that we lack jurisdiction to review the denial of Ixcuna-Garcia's asylum application as untimely. To qualify for asylum, a noncitizen generally must file her application within one year of arriving in the United States. See 8 U.S.C. § 1158(a)(2)(B). An applicant may be excused from this statutory deadline by establishing "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." Id. § 1158(a)(2)(D). Ixcuna-Garcia concedes that she failed to file her asylum application within the one-year statutory deadline but insists that she qualifies for an exemption due to extraordinary circumstances, which include her age upon entry, her inability to speak English or fluent Spanish, her isolation in an insular Mayan community in New Bedford, and the psychological trauma she suffered due to her experiences in Guatemala. She urges this court to review the IJ and the BIA's determination that her asylum claim is nonetheless barred.

Congress has "carefully circumscribed the scope of judicial review with respect to timeliness determinations in asylum cases." Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007). The relevant statutory provision provides that "[n]o court shall have jurisdiction to review any determination of the Attorney

General" concerning, among other things, whether an asylum applicant has complied with the one-year filing deadline. 8 U.S.C. § 1158(a)(3). This jurisdictional limitation, however, does not apply to "review of constitutional claims or questions of law raised upon a petition for review." Id. § 1252(a)(2)(D).

Accordingly, we have held that we lack "jurisdiction to review the agency's determination regarding the timeliness of [an] asylum application or its application of the 'extraordinary circumstances' exception, unless the petitioner identifies a legal or constitutional defect in the decision." El-Labaki v. Mukasey, 544 F.3d 1, 5 (1st Cir. 2008) (citing 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D)); accord Pan, 489 F.3d at 84. The key that unlocks federal court review in such cases is a "colorable" constitutional or legal question that is not simply a "thinly-veiled challenge to the IJ's factfinding." Pan, 489 F.3d at 84; see also Lutaaya v. Mukasey, 535 F.3d 63, 69-70 (1st Cir. 2008).

Ixcuna-Garcia contends that her petition raises precisely the kind of issue that is exempted from the jurisdiction-stripping provision: a constitutional challenge alleging a due process violation. By Ixcuna-Garcia's telling, the IJ and the BIA's refusal to consider her proffered psychiatric evaluation as evidence of extraordinary conditions justifying a waiver of the filing deadline impinged upon her right to due process and resulted in proceedings that were fundamentally unfair.

But Ixcuna-Garcia's claim cannot be read so broadly as to constitute the kind of colorable constitutional challenge that section 1252(a)(2)(D) places within our jurisdiction. As we have consistently explained, a challenge that merely "takes issue with the evidentiary basis for the BIA's finding that 'circumstances' did not excuse [a petitioner's] untimely application for asylum" is not a colorable constitutional or legal claim that falls within our jurisdiction. Rodriguez-Palacios v. Barr, 927 F.3d 13, 17 (1st Cir. 2019); see also Ramirez-Matias v. Holder, 778 F.3d 322, 326 (1st Cir. 2015) ("[A] challenge to the way in which the agency weighed the evidence and balanced negative and positive factors is not a claim that raises a legal question."); Lutaaya, 535 F.3d at 69-70 (concluding that assertions about improperly overlooking or weighing evidence are not colorable due process claims).

Although clothed in the language of a due process challenge, Ixcuna-Garcia's claim is more appropriately read as a challenge to the manner in which the IJ and the BIA weighed the evidence she submitted in support of her asylum application. Ixcuna-Garcia does not meaningfully contend that the IJ and the BIA declined to consider her evidence of psychiatric trauma at all; rather, she asserts that the IJ and the BIA failed to accord her proffered evidence the weight she thought it should be due. This is precisely the kind of "thinly-veiled challenge to the IJ's factfinding" that our precedent recognizes as outside the

exception to section 1158(a)(3)'s jurisdiction-stripping rule. Pan, 489 F.3d at 84. We, therefore, lack jurisdiction to review Ixcuna-Garcia's challenge to the denial of her asylum application on timeliness grounds.[3]

### III.

We next consider Ixcuna-Garcia's challenge to the credibility determinations in connection with the denial of her request for withholding of removal. Where, as here, the BIA adopts and adds its own gloss to an IJ's conclusions, we examine the relevant portions of both decisions. Molina-Diaz v. Wilkinson, 989 F.3d 60, 63 (1st Cir. 2021). We review legal conclusions de novo and factual findings under the deferential "substantial evidence" standard. Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012).

Ixcuna-Garcia's arguments train on three aspects of the IJ's and the BIA's credibility determinations. First, Ixcuna-Garcia asserts that the IJ and the BIA erred in basing their credibility findings on the lack of an affidavit from her mother corroborating her rape without giving Ixcuna-Garcia either notice that such an affidavit would be required or an opportunity to

---

[3] Given that the IJ did in the alternative consider and reject Ixcuna-Garcia's renewed challenge to the timeliness ruling on the merits, we need not determine whether the IJ was required to consider that challenge in the remanded proceedings.

explain her inability to produce the required evidence.[4]  Second, Ixcuna-Garcia contends that the IJ's and the BIA's credibility determinations were flawed because they failed to give due weight to the report submitted by Reczycki establishing Ixcuna-Garcia's psychological trauma.  Third, she contends that even without Reczycki's report, the record compelled a finding that Ixcuna-Garcia was credible.  We consider each argument in turn.

**A.**

Ixcuna-Garcia first contends that the BIA erred in upholding the IJ's decision to require Ixcuna-Garcia to produce an affidavit from her mother corroborating Ixcuna-Garcia's rape by a Ladino man without either notice of the need for specific corroborating evidence or an opportunity to explain her inability to produce the required evidence.  Ixcuna-Garcia's argument keys on the final sentence of 8 U.S.C. § 1158(b)(1)(B)(ii),[5] which states:

> Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the

---

[4]  Ixcuna-Garcia does not present this argument as raising a constitutional or legal error applicable to her asylum claim.

[5]  Because Ixcuna-Garcia's application post-dates the enactment of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005), its provisions apply to the credibility determinations at issue here.  See 8 U.S.C. § 1231(b)(3)(C) (applying 8 U.S.C. § 1158(b)(1)(B)(ii), (iii) to credibility determinations regarding withholding of removal).

- 15 -

> applicant does not have the evidence and cannot reasonably obtain the evidence.

Ixcuna-Garcia asserts that this statutory language requires an IJ to provide advance notice to the applicant of the need for specific corroborating evidence, or, at the very least, an opportunity for the applicant to explain why such evidence cannot reasonably be provided. After all, absent notice or an opportunity to explain, an applicant could not comply with the statute's command that "such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." Id.

Several of our sister circuits have weighed in with divergent views on whether section 1158(b)(1)(B)(ii) imposes an advance notice requirement. Compare Ren v. Holder, 648 F.3d 1079, 1091-92 (9th Cir. 2011) (requiring advance notice), and Saravia v. Att'y Gen., 905 F.3d 729, 737-38 (3rd Cir. 2018) (same), with Liu v. Holder, 575 F.3d 193, 198 (2d Cir. 2009) (declining to require advance notice), Gaye v. Lynch, 788 F.3d 519, 528-30 (6th Cir. 2015) (same), and Rapheal v. Mukasey, 533 F.3d 521, 530 (7th Cir. 2008) (same). To resolve the present appeal, however, we need not pick a side. Here, the IJ and the BIA committed the more fundamental error of failing to provide Ixcuna-Garcia with even an opportunity to explain why she could not reasonably obtain the required evidence, a procedure that is mandated by both the BIA's and this court's precedent.

- 16 -

The BIA's decision in Matter of L-A-C- explains that if an IJ "determines that specific corroborating evidence should have been submitted, the applicant should be given an opportunity to explain why he could not reasonably obtain such evidence." 26 I. & N. Dec. 516, 521 (BIA 2015); see also id. at 521 n.4 ("Permitting the applicant to state the reasons why the corroborating evidence could not be obtained is consistent with both the language of the REAL ID Act and the [BIA]'s longstanding practice."). Indeed, Matter of L-A-C- requires an IJ to "ensure that the applicant's explanation is included in the record" and to "clearly state for the record whether the explanation is sufficient." Id. at 521–22.

Matter of L-A-C-'s requirement is also "consistent with our own precedent." Molina-Diaz, 989 F.3d at 66 (citing Soeung, 677 F.3d at 488). In Soeung, we held that "before the failure to produce corroborating evidence can be held against an applicant," the IJ must make "explicit findings that . . . the applicant's failure to [produce that evidence] was not adequately explained." 677 F.3d at 488. Of course, an IJ cannot make this finding if the IJ does not first provide the applicant with an opportunity to explain the inability to produce the corroborating evidence. We reaffirmed this requirement in Molina-Diaz, explaining that Soeung's holding regarding corroboration remains good law even

- 17 -

though it predated the passage of the REAL ID Act.  Molina-Diaz,
989 F.3d at 66 n.2.

This rule fits logically within the statutory scheme
governing corroborating evidence.  Under the relevant provision,
when an IJ "determines that the applicant should provide
[corroborating evidence], such evidence must be provided unless
the applicant does not have the evidence and cannot reasonably
obtain the evidence."  8 U.S.C. § 1158(b)(1)(B)(ii).  An IJ could
not follow the dictates of the statute and find that an applicant
"cannot reasonably obtain [corroborating] evidence" without first
providing her some chance to explain why such evidence cannot be
provided.[6]

Turning to the facts in this case, the IJ plainly failed
to provide Ixcuna-Garcia with such an opportunity to set the record
straight.  The BIA seemingly excused the IJ's error because
Ixcuna-Garcia had "yet to supply either an explanation or an
affidavit."  But it would be odd to expect Ixcuna-Garcia to produce
the required evidence or explanation for the first time on appeal

---

[6] Contrary to the government's belief, this rule does not
necessarily require the "unusual" procedure of allowing additional
hearings or continuances.  The IJ could simply ask in the initial
hearing why the applicant does not have the required corroborating
evidence.  Section 1158(b)(1)(B)(ii) and Matter of L-A-C- then
requires that the IJ evaluate the applicant's explanation and state
on the record whether that explanation suffices.  See 26 I. & N.
Dec. at 521-22.  The IJ need not always hold a second hearing or
grant a continuance to allow the applicant to obtain that evidence.

to the BIA without any prompting. After all, the BIA reviews findings of fact determined by the IJ, including credibility determinations, under a "clearly erroneous" standard and not de novo. 8 C.F.R. § 1003.1(d)(3)(i). Moreover, as explained earlier, Matter of L-A-C- requires an IJ to "ensure that the applicant's explanation is included in the record and . . . clearly state for the record whether the explanation is sufficient." 26 I. & N. Dec. at 521-22. It is the IJ -- not the BIA -- that must enter this explanation into the record.

The government's response relies on the mistaken belief that an IJ need never provide an applicant with an opportunity to explain a failure to produce specific corroborating evidence when the IJ finds the applicant's testimony not credible. As the government would have it, so long as the IJ makes an express adverse credibility finding, the IJ can escape the mandates of Matter of L-A-C- and this court's precedent.

We need take no position on whether the government's argument would have force if the IJ's adverse credibility finding did not rest at all on any unexplained absence of corroboration. Here, the IJ and the BIA did not treat Ixcuna-Garcia's lack of corroboration as an independent or alternative basis for the credibility finding; rather, it was one of the factors -- along with the noted inconsistencies -- on which the IJ and the BIA relied to reach the challenged conclusions. Indeed, the

government concedes this very point in its brief, stating that "[u]nder the totality of the circumstances analysis, the immigration judge and the Board appropriately relied on [the lack of corroboration] to support the adverse credibility determination."

The government contends that our decision in Zeru v. Gonzales nevertheless blesses its proposed framework. See 503 F.3d 59 (1st Cir. 2007). Specifically, the government points to language in Zeru explaining that a noncitizen is not owed a presumption of credibility and that it is always the noncitizen's burden to "put forth sufficiently credible testimony or other evidence to establish her eligibility for [relief]." Id. at 73. But it takes quite a leap in logic to bound from that general statement on credibility to the rule the government proposes, especially as the IJ in Zeru appears to have provided the applicant with precisely the opportunity to explain the lack of corroboration that is missing here. See, e.g., id. at 65 (explaining that the IJ had directed Zeru at a prior hearing "to obtain news reports or other information to substantiate" the testimony but that Zeru "neither produced the documents nor had an explanation for her failure to do so"); id. at 70 (noting that Zeru was "advised by an IJ to obtain [specific corroborating] documents" yet "was able neither to produce the [relevant] records nor to explain why she did not produce them").

To be sure, section 1158(b)(1)(B)(ii) specifies that the applicant's testimony must be "otherwise credible." However, as explained previously, there is nothing in the IJ's or the BIA's decisions to indicate that Ixcuna-Garcia's testimony was not "otherwise credible" absent the lack of corroboration. Where it is unclear whether the IJ and BIA would have found the applicant not "otherwise credible" notwithstanding the required corroboration, we have held that the IJ must give the applicant "the necessary opportunity to explain why she did not provide corroborating evidence." Molina-Diaz, 989 F.3d at 66. So, too, in this case. Absent some statement by the IJ or the BIA indicating that Ixcuna-Garcia would not be credible even if she had proffered the necessary corroborating evidence, we can have no confidence that the IJ or the BIA would have come to the same credibility determination had Ixcuna-Garcia been provided an opportunity to either produce the required corroboration or explain why she reasonably could not.

Accordingly, we hold that the IJ erred in failing to provide Ixcuna-Garcia with such an opportunity, as required by Matter of L-A-C- and Molina-Diaz, and the BIA erred in failing to correct this mistake. In the remanded proceedings, Ixcuna-Garcia should be given an opportunity to explain (should she still not produce the required corroboration) why she has not been able to do so.

**B.**

Ixcuna-Garcia's second argument is less availing. She contends that the IJ and the BIA failed to meaningfully consider the psychiatric evaluation prepared by Reczycki, which Ixcuna-Garcia cited to clarify the perceived inconsistencies in her testimony and explain why she had not disclosed her sexual assault in the prior proceedings. Ixcuna-Garcia asserts that the decision to not credit Reczycki's report was arbitrary and capricious because it was based solely on the IJ's personal perceptions about Reczycki's credentials (noting that she was a nurse rather than a doctor) and the time necessary to complete a reliable diagnosis of psychological trauma (noting that she spent "only three hours" with Ixcuna-Garcia). As support, Ixcuna-Garcia and the amici tout Reczycki's qualifications and the merits of Reczycki's methodology. In essence, Ixcuna-Garcia suggests that no rational decisionmaker would have rejected her explanation of the apparent inconsistencies in her testimony given Reczycki's report.

Our review of such factual findings is under the "deferential substantial evidence standard," not de novo. Soeung, 677 F.3d at 487. As such, "we will reverse only if the record is such as to compel a reasonable factfinder to reach a contrary determination." Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). That Reczycki's psychiatric evaluation "supports a conclusion" which differs from that reached by the IJ and the BIA "is not

enough to warrant upsetting [their] view of the matter." <u>Lopez de Hincapie</u> v. <u>Gonzales</u>, 494 F.3d 213, 218 (1st Cir. 2007). And while we might well regard Reczycki's evaluation with less skepticism than that expressed by the IJ, Ixcuna-Garcia points us to nothing in the record before the agency compelling the IJ or the BIA to adopt that evaluation as fact.

Moreover, as we explained above, this is not a case where the IJ or the BIA failed to consider or declined to admit relevant evidence entirely. Rather, the IJ noted that it did not give the report much weight due both to Reczycki's professional background and the length of time Reczycki took to conduct the evaluation. The BIA then accepted the IJ's conclusion that "the real reason [Ixcuna-Garcia] did not include certain incidents [in her prior statements] was because they did not happen rather than that they were omitted for the reasons she gave."

Of course, on remand, the overall mix of the evidence may be different, depending on what Ixcuna-Garcia does to address the matter of corroboration by her mother. How Reczycki's testimony might be assessed and weighed in those circumstances remains to be seen.

### C.

We need not tarry long with Ixcuna-Garcia's contention that the record compelled a finding that she was credible, even without considering the expert's evaluation. The fact is that she

told different stories on different occasions. And while she marshals cogent explanations for the inconsistencies in her testimony, nothing compels an IJ or the BIA to agree.

## IV.

As to her last argument, which concerns only the denial of her application for withholding, Ixcuna-Garcia and the government largely agree that remand is necessary. The government concedes that the IJ and the BIA failed to assess Ixcuna-Garcia's claims of past persecution based on her mistreatment at the hands of her classmates and the effect of the civil war on her family, which Ixcuna-Garcia had raised in her initial hearing. While the IJ ruled on those aspects of the withholding of removal claim in his 2011 decision, the government acknowledges that that decision did not survive Ixcuna-Garcia's first BIA appeal. In the remanded proceedings, neither the IJ nor the BIA addressed these aspects of Ixcuna-Garcia's claim. Because the IJ's and the BIA's consideration of Ixcuna-Garcia's claim of past persecution may also impact the assessment of future persecution, the government admits that remand is required so that these components of Ixcuna-Garcia's claim may be included in the agency's overall assessment of her application for withholding. We agree.

**V.**

For the foregoing reasons, we <u>grant</u> in part and <u>deny</u> in part Ixcuna-Garcia's petition for review, and <u>remand</u> for further proceedings in accord with this decision.